IN THE UNITED STATES DISTRICT COURT§
FOR THE DISTRICT OF MARYLAND

CHARLES A. SCHWARTZ

   v.

UNITED STATES OFFICE OF
PERSONNEL MANAGEMENT

:   Civil Action No. DKC 12-1567

**MEMORANDUM OPINION**

Presently pending and ready for review in this dispute over life insurance benefits continuing into retirement under the Federal Employees' Group Life Insurance Act ("FEGLIA"), 5 U.S.C. §§ 8701, *et seq.*, is the motion to dismiss, or in the alternative, for summary judgment filed by Defendant United States Office of Personnel Management ("OPM" or "Defendant") (ECF No. 10) and a cross-motion for summary judgment filed by Plaintiff Charles Schwartz ("Plaintiff") (ECF No. 21). The issues have been fully briefed, and the court now rules, no hearing being deemed necessary. Local Rule 105.6. For the following reasons, the court will grant Defendant's motion and deny Plaintiff's cross-motion for summary judgment.

**I.  Background**

**A.  Factual Background**

The salient facts are undisputed and are drawn from the administrative record before OPM.[1]  In 1968, Plaintiff began a federal judicial clerkship in the United States Court of Claims, which he asserts is now the United States Court of Appeals for the Federal Circuit.  (ECF No. 1 ¶ 1).[2]  On September 3, 1968, Plaintiff completed Standard Form ("SF") 176 covering election, declination, or waiver of life insurance coverage.  (ECF No. 10-2, at 73).  The form gave Plaintiff the following options: (1) to "elect the $10,000 additional optional insurance . . . [t]his optional insurance is in addition to [employee's] regular insurance";[3] (2) to "decline the $10,000 additional optional insurance," but not regular insurance; or (3) to waive coverage

_____

[1]  Because the court's review is limited to the administrative record, the affidavit Plaintiff submitted with his opposition and cross-motion for summary judgment will not be considered.  *See Burgin v. OPM*, 120 F.3d 494, 497 (4th Cir. 1997).

[2]  The appellate division of the former United States Court of Claims is now part of the United States Court of Appeals for the Federal Circuit, but the trial functions of the former United States Court of Claims are now assigned to the United States Court of Federal Claims.

[3]  As will be seen, the option to elect or decline "$10,000 additional optional insurance" on SF 176 referred to "Optional insurance" covered in 5 U.S.C. § 8714a, which was enacted on December 16, 1967.  *See* Pub.L.No. 90-206, 81 Stat. 613, 647.

under Federal Employees' Group Life Insurance ("FEGLI")
altogether.[4]

When Plaintiff completed SF 176 in 1968, FEGLIA offered to
federal employees regular life insurance and "Optional
insurance" under 5 U.S.C. § 8714a. Section 8702 of the FEGLIA,
enacted in 1954, addressed "Automatic coverage" for regular or
"Basic life insurance." *See* 5 U.S.C. § 8702; *see also* Pub.L.No.
89-554, 80 Stat 578, 593 (1966). Specifically, Section 8702
provided that "[a]n employee is automatically insured on the
date he becomes eligible for insurance." 5 U.S.C. § 8702(a).
The statute further provided that "[a]n employee desiring not to
be insured shall give written notice to his employing office on
a form prescribed by the Commission," such as SF 176. 5 U.S.C.
§ 8702(b).[5]

---

[4] FEGLI is a comprehensive life insurance program for
federal employees created by the Federal Employees Group Life
Insurance Act of 1954 ("FEGLIA"), codified at 5 U.S.C. §§ 8701 –
8716 (2006).

[5] Section 8702 has been amended three times since 1954, but
the applicable provisions here, namely Sections 8702(a) and (b),
have remained largely unchanged. Specifically, Section 8702(a)
was slightly amended in 1978 with the substitution of the
"Office of Personnel Management" for "Civil Service Commission."
Pub.L.No. 95-454, § 906(a)(2), 92 Stat. 1111. Section 8702(b)
has not been amended since 1954.

When FEGLIA was enacted in 1954, employees eligible to be
insured who did not opt out of life insurance coverage under
Section 8702(b), were "eligible to be insured for an amount of
group life insurance approximating . . . annual compensation not
exceeding $20,000" pursuant to 5 U.S.C. § 8704. *See* Pub.L.No.

Individuals with regular or "Basic life insurance" could also elect "Optional insurance" pursuant to 5 U.S.C. § 8714a, which was enacted on December 16, 1967. *See* Pub.L.No. 90-206.[6]

---

598, 86 Stat. 736, 737 (1954). Section 8704(a) was amended in 1967, eliminating the $20,000 annual compensation cap. The amended Section 8704(a) provided that "[a]n employee eligible for insurance [under FEGLIA] is entitled to be insured for an amount of group life insurance" based on the employee's annual pay.

Section 8704(a) now provides that "[a]n employee eligible for insurance is entitled to be insured for an amount of group life insurance equal to – (1) the employee's basic insurance amount, multiplied by (2) the appropriate factor determined on the basis of the employee's age in accordance with [the schedule in Section 8704]." Section 8701 of the FEGLIA was amended in 1980 to add a new subsection (c), defining "basic insurance amount" as an amount equal to the greater of:

> (1) the annual rate of basic pay payable to the employee, rounded to the next higher multiple of $2,000 plus $2,000, or
> (2) $10,000, except that the amount of insurance may not exceed the annual rate of basic pay payable for positions as level II of the Executive Schedule under section 5313 of this title.

Pub.L.No. 96-427, 94 Stat. 1831, 1831. The current Section 8701(c) defines "basic insurance amount" as an amount equal to the greater of "(1) the annual rate of basic pay payable to the employee, rounded to the next higher multiple of $1,000 plus $2,000, or (2) $10,000." 5 U.S.C. § 8701(c).

[6] "Optional insurance" under Section 8714a is also known "Option A" standard optional insurance. *See* 5 C.F.R. § 870.205(a). Section 8714a(a), when enacted, provided that "[u]nder the conditions, directives, and terms specified in sections 8709-8712 of this title, the Civil Service Commission . . . may purchase a policy which shall make available to each insured employee equal amounts of optional life insurance . . . in addition to the amounts provided in section 8704(a) of this

4

Section 8714a(b) provided that "[t]he optional life insurance . . . shall be made available to each insured employee under such conditions as the Commission shall prescribe and in amounts approved by the Commission but not more than the greater of $10,000 or an amount which, when added to the amount provided in section 8704(a) of this title, makes the sum of his insurance equal to his annual pay."[7]

When Plaintiff completed SF 176 on September 3, 1968, he elected to waive *all* life insurance available under FEGLIA at the time, namely regular or "Basic life insurance" under 5 U.S.C. § 8702 and "Optional insurance" under Section 8714a.[8]

_____

title." Although Section 8714a has been amended multiple times since 1967, Section 8714a(a) has remained largely unchanged.

[7] This section is now 8714a(b)(2), and provides that:

> [t]he optional life insurance . . . shall be made available to each insured employee under such conditions *as the Office shall prescribe* and in amounts approved by the Office but not more than the greater of $10,000 or an amount which, when added to the amount provided in section 8704(a) of this title, makes the sum of his insurance equal to his annual pay.

(emphasis added). 5 C.F.R. § 870.205(a) provides that effective for pay periods beginning on or after October 30, 1998, coverage for "Optional insurance," or "Option A" standard optional insurance, is $10,000.

[8] In 1980, two more types of optional life insurance became available: (1) "Additional optional life insurance" under 5 U.S.C. § 8714b, also known as "Option B" additional optional insurance (*see* 5 C.F.R. § 870.205(b)(1)); and (2) "Optional life

Plaintiff remained a law clerk until 1970. After completing his two-year clerkship, Plaintiff worked in the private sector for approximately twenty-nine (29) years. (ECF No. 1, at 2). Plaintiff entered federal service again on December 6, 1999 in various contractual positions with the United States Agency for International Development ("USAID"), during which time he was ineligible to participate in FEGLI. (*Id.* at 3). Then, on July 22, 2007, Plaintiff began employment with the United States Department of Agriculture ("USDA") as a "Schedule B" employee, at which point he became eligible for FEGLI coverage. (*Id.* at 4). On August 19, 2007, Plaintiff elected "Basic life insurance" and "Additional optional life insurance" under FEGLI. (ECF No. 10-2, at 72).

USDA terminated Plaintiff's employment and then Plaintiff retired effective September 10, 2010, just over three years after he elected to participate in FEGLI. (*Id.* at 76, 83). Plaintiff elected an annuity at retirement. (*Id.* at 76). Upon termination, USDA informed Plaintiff that he would be ineligible to continue receiving life insurance into retirement because he did not have life insurance for the five years immediately preceding retirement and he waived life insurance coverage at

insurance on family members" under 5 U.S.C. § 8714c, also known as "Option C" family optional insurance. *See* Pub.L.No. 96-427, 94 Stat. 1831, 1834-1836. The former insurance is discussed *supra* and the latter is not at issue here.

his first opportunity to elect it when he joined federal service in 1968 as a law clerk. (*Id.* at 67).

### B. Procedural Background

On October 22, 2011, Plaintiff submitted a letter to OPM, in which he requested that the agency waive the "5-year service requirement" to be eligible to continue life insurance into retirement." (*Id.* at 66—67). Plaintiff asserted that he was never informed during his clerkship, a temporary two-year position, about "the consequences of not accepting . . . Life Insurance at the earliest opportunity." (*Id.* at 67). Plaintiff further stated that even though he rejoined the federal government in 1999, he was employed as a contractor until 2007 and in that capacity was ineligible for life insurance coverage under FEGLIA. Plaintiff maintained that he elected to participate in life insurance under FEGLIA at the earliest opportunity, which he believed to be in August 19, 2007, when he was hired as a Schedule B employee with USDA.

On January 20, 2012, OPM denied Plaintiff's request to continue "Basic life insurance" under FEGLIA into retirement on the ground that Plaintiff "[d]id not have insurance for the full period(s) it was available or for the five years immediately preceding the annuity commencing date." (*Id.* at 59). Specifically, the agency noted that "Basic life insurance" became available to Plaintiff on August 26, 1968, he first

elected to receive life insurance on August 19, 2007, and subsequently retired on September 11, 2010. (*Id.*). Furthermore, OPM stated that "[s]ince the continuation of optional life insurance depends upon the continuation of Basic Life Insurance, [Plaintiff is] not eligible to continue any optional life insurance [he] may have had as an employee." (*Id.*).

On February 15, 2012, Plaintiff timely requested reconsideration from OPM, raising many of the same arguments as in his initial request, namely that he elected to be covered under life insurance at his first opportunity, which he believed to be when he joined USDA as a "Schedule B" employee on July 22, 2007. (*Id.* at 13 - 14). Plaintiff reiterated that he did not recall being informed of the consequences of not accepting life insurance when he first began federal employment in 1968 with the U.S. Court of Claims.

On April 19, 2012, OPM issued a final agency decision affirming the agency's initial decision to deny Plaintiff's request to extend life insurance into retirement. (*Id.* at 5-6). OPM referenced 5 C.F.R. § 870.701(a)(1-3), which states that when an insured employee retires, he may continue basic life insurance provided he:

> (1) Is entitled to retire on an immediate
>     annuity under a retirement system for
>     civil employees . . .

> (2) Was insured for the 5 years of service
>     immediately before the date the annuity
>     starts or for the full period(s) of
>     service during which he . . . was
>     eligible to be insured if less than 5
>     years; and
> (3) Has not converted to an individual
>     policy as described in § 870.603.

5 C.F.R. § 870.701(a)(1-3). OPM noted that Plaintiff was not enrolled "in the basic life insurance coverage during the <u>full</u> five years <u>immediately</u> preceding [his] retirement, [and was thus] [in]eligible to continue life insurance coverage into retirement." (ECF No. 10-2, at 6) (emphasis in original). OPM further noted that it did not have authority to waive this requirement under the law. (*Id.*). Finally, OPM referenced Plaintiff's argument that he was uninformed about the "five year requirement," but advised that "OPM will not grant relief solely because an individual was misadvised or not advised by his or her employing office regarding this requirement." (*Id.*). OPM further advised Plaintiff of his right to appeal to federal district court.

Plaintiff subsequently filed the instant complaint on May 24, 2012, challenging OPM's final agency decision and seeking an order requiring OPM "to grant Plaintiff's request to carry FEGLI Insurance into retirement." (ECF No. 1, at 11). Thereafter, both parties filed several motions requesting to extend the time to file their respective responses, and Defendant finally moved

to dismiss or for summary judgment on February 4, 2013. (ECF No. 10). Plaintiff filed his opposition on July 31, 2013 and a cross-motion for summary judgment. (ECF No. 21). Defendant replied to Plaintiff's Opposition and opposed Plaintiff's cross-motion for summary judgment on August 14, 2013. (ECF No. 23). Plaintiff replied to Defendant's opposition to the cross-motion on August 21, 2013. (ECF No. 24).

## II. Analysis

### A. Standard of Review

"A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof." 5 U.S.C. § 702. A court reviews OPM actions under the FEGLIA pursuant to the Administrative Procedure Act ("APA"), 5 U.S.C. § 706, based on the administrative record that was before OPM when it made its determination. *Burgin*, 120 F.3d at 497. Under Section 706 of the APA, a court reviews an agency decision to determine whether it was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). In its analysis, the court must decide "whether the decision was based on a consideration of all the relevant factors and whether there has been a clear error of judgment." *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416 (1971), *overruled on other grounds by Califano*

*v. Sanders*, 430 U.S. 99, 97 (1977).  Although the court's "inquiry into the facts is to be searching and careful, the ultimate standard of review is a narrow one.  The court is not empowered to substitute its judgment for that of the agency." *Id.*

**B.  Requirements for Continuing FEGLI Coverage into Retirement**

Plaintiff disputes OPM's decision to deny him continued life insurance coverage into retirement.[9]  Although he initially

---

[9] Although OPM styles its motion as one to dismiss or for summary judgment, the argument for lack of subject matter jurisdiction is unclear.  FEGLIA states that "[t]he district courts of the United States have original jurisdiction . . . of a civil action or claim against the United States founded on this chapter."  5 U.S.C. § 8715.  This waiver of sovereign immunity, courts have found, is limited to actions that involve a breach of the Government's duties under FEGLIA.  *Barnes v. United States*, 307 F.2d 655, 657-58 (D.C.Cir. 1962); *see also Lewis v. Merit Sys. Prot. Bd.*, 301 F.3d 1352, 1353 (Fed.Cir. 2002) (noting that sovereign immunity waived under FEGLIA is limited to claims involving some right created by the Act, and a breach by the government of some corresponding duty).  Section 8715 specifically grants jurisdiction to hear suits arising under FEGLIA – it "would be meaningless if sovereign immunity could be interposed as a defense to any such suit.  Accordingly, numerous courts have held that [Section] 8715's consent to jurisdiction waives the Government's sovereign immunity to claims arising under FEGLIA."  *Nixon v. U.S.*, 916 F.Supp.2d 855, 861 (N.D.Ill. 2013); *Laporte v. United States*, No. 09-7247, 2011 WL 3678872, at *4 (S.D.N.Y. Aug. 19, 2011) (citing cases).

OPM appears to argue that sovereign immunity has not been waived as to Plaintiff's claims.  Plaintiff's primary claim that OPM violated FEGLIA by denying him life insurance coverage into retirement, for which he alleges he is qualified under FEGLIA, arises under the statute.  *See Nixon*, 916 F.Supp.2d at 861 ("whether a claim has substantive merit is an entirely separate question from whether the Government has waived sovereign

challenged the decision to deny him *any* insurance coverage into retirement, his primary argument now is that an annuitant is eligible to continue "Additional optional life insurance" into retirement *regardless* of whether he is eligible to continue "Basic life insurance" into retirement, provided the annuitant had "Additional optional life insurance" in place for the full five years immediately preceding retirement, or in the alternative, the full period of service during which "Additional optional life insurance" was available to him. (ECF No. 21, at 12). Put differently, Plaintiff argues that eligibility for "Additional optional life insurance" into retirement is *not* contingent on eligibility for "Basic life insurance" into retirement. Plaintiff asserts that "Additional optional life insurance" only became available in 1980, with the enactment of 5 U.S.C. § 8714b, and thus Plaintiff elected to be covered under "Additional optional life insurance" at the first opportunity when he became a "Schedule B" employee with USDA on July 22, 2007. As will be seen, Plaintiff's attempt to detach

---

immunity with respect to that class of claim."). The Government has waived sovereign immunity over Plaintiff's primary claim.

As will be seen, however, Plaintiff's second claim that he was not advised about the consequences of waiving life insurance coverage does not appear to depend on any legal duty that the Government breached under FEGLIA, and it may be that sovereign immunity has not been waived as to Plaintiff's second claim.

"Additional optional life insurance" from "Basic life insurance" fails.

Section 8714b(a), which covers "Additional optional life insurance," specifically provides that "[u]nder the conditions, directives, and terms specified in sections 8709 through 8712 of this title, the Office of Personnel Management . . . may purchase a policy which shall make available to each employee *insured under section 8702* of this title amounts of additional optional life insurance." (emphasis added). This language plainly dictates that "Basic life insurance" coverage pursuant to Section 8702 is a prerequisite to electing "Additional optional life insurance." Along the same lines, an individual "who cancels his/her Basic insurance automatically cancels *all* forms of Optional insurance." 5 C.F.R. § 870.502(b) (emphasis added).

Life insurance terminates at the earlier of an employee's separation from service or twelve (12) months after discontinuance of his pay. *See* 5 U.S.C. § 8706(a). An employee who retires on an immediate annuity, however, may continue receiving life insurance *under conditions determined by OPM*, and provided he has been insured throughout:

> (A) the 5 years of service immediately preceding the date of the employee's retirement ["5-year requirement"], or
> (B) the full period or periods of service during which the employee was entitled to be

13

> insured, if fewer than 5 years [the "all-opportunity requirement"].

5 U.S.C. § 8706(b)(1). Section 8714b, which covers "Additional optional life insurance," similarly states that provided an annuitant satisfies the above two conditions, a retiring employee may continue life insurance *under conditions determined by OPM*. *See* 5 U.S.C. § 8714b(c)(2). Thus, both sections authorize OPM to "prescribe regulations necessary to carry out the purposes" of FEGLIA, including regulations governing requirements to continue life insurance into retirement. 5 U.S.C. § 8716; *see also Reichenback v. Merit Systems Protection Board*, 2000 WL 1471633, at *2 (Fed. Cir. 2000).

It is axiomatic that "[t]he power of an administrative agency to administer a congressionally created . . . program necessarily requires the formulation of policy and the making of rules to fill any gap left, implicitly or explicitly, by Congress." *Chevron v. National Resources Defense Council*, 467 U.S. 837, 843 (1984) (*citing Morton v. Ruiz*, 415 U.S. 199, 231 (1974)). If Congress has explicitly left a gap for the agency to fill, there is an express delegation of authority to the agency to elucidate a specific provision of the statute by regulation. Accordingly, as authorized by statute, OPM enacted regulations that made qualifying for continuing "Basic life insurance" coverage into retirement a prerequisite to an

annuitant's ability to continue any type of "Optional insurance" into retirement, irrespective of whether the annuitant otherwise met the requirements under Section 8714b(c)(2). *See* 5 C.F.R. § 870.701(e)(1); *see also Grooms v. Office of Personnel Management*, 154 F.3d 181, 184 (4th Cir. 1998)(recognizing that "[s]tandard optional life insurance and additional life insurance are made available to employees who have basic life insurance under such conditions as 'the Office shall prescribe.'" (*quoting* 5 U.S.C. §§ 8714a(b) and 8714b(b)). Such legislative regulations are given controlling weight unless they are arbitrary, capricious, or manifestly contrary to the statute, which is simply not the case here. *Chevron*, 467 U.S. at 843-44.

Plaintiff's reading of Section 8714b(c) ignores the portion of the statute that explicitly enables a retiring employee to continue "Additional optional life insurance" *under conditions determined by OPM*. *See* 5 U.S.C. § 8714b(c)(2).[10] These

---

[10] The legislative history behind Section 8714b that Plaintiff cites, (ECF No. 21, at 18 - 19), is inapposite because it does nothing to undermine the statute's plain language, which provides that OPM can prescribe conditions under which an employee who retires on an immediate annuity may continue FEGLI coverage. *See United States v. Gonzales*, 503 U.S. 1, 6 (1997) ("[g]iven the straightforward statutory command, there is no reason to resort to legislative history"); *see also Mylan Pharmaceuticals, Inc. v. U.S. Food and Drug Admin.*, 454 F.3d 270, 276 (4th Cir. 2006) (rejecting Plaintiff's references to legislative history because there was "no textual ambiguity of

statutory conditions are restated in the requirements of 5 C.F.R. §§ 870.701(a)(1),(a)(2), and (e)(1).

Pursuant to 5 C.F.R. § 870.701(a), an employee may continue "Basic life insurance" into retirement, provided he is: (a) entitled to retire on an immediate annuity; (b) was insured for the 5 years of service immediately before the date the annuity starts, or for the full period(s) of service during which he was eligible to be insured if less than 5 years; and (c) has not converted to an individual policy as described in 5 C.F.R. § 870.603. Here, Plaintiff acknowledges that he explicitly elected to waive *all* life insurance coverage at the first opportunity in 1968. (ECF No. 10-2, at 73). He next elected life insurance in July 2007, when he first became eligible as a "Schedule B" employee with the USDA, and retired three years later on September 11, 2010. Thus, Plaintiff did not meet the eligibility requirements to continue "Basic life insurance" into retirement.

Section 870.701(e)(1) provides that being able to continue "Basic life insurance" into retirement *is* indeed a prerequisite to an annuitant's ability to continue any type of optional insurance. Specifically, Section 870.701(e)(1) provides that "[a]n annuitant . . . *who is eligible to continue or have*

the sort that would ordinarily lead [the court] to consider materials outside the statute's four corners").

*reinstated Basic insurance* is also eligible to continue or have reinstated Optional insurance if he/she meets the same coverage requirements for Optional insurance as those stated in [Section 870.701(a)] for Basic insurance." (emphasis added).[11] The FEGLI handbook that OPM publishes on its website further supports this point, providing that *only* annuitants eligible to continue "Basic insurance" become eligible to continue any type of optional insurance, provided the annuitants meet the same coverage requirements for the optional insurance as those for "Basic insurance." (ECF No. 10-3, at 5).[12] Finally, the fact that initial enrollment in "Additional optional life insurance" requires that an employee first be eligible for "Basic life insurance" further undermines Plaintiff's position that

---

[11] 5 C.F.R. § 870.201(b) provides that there are three types of "Optional insurance": Option A (standard optional insurance), Option B (additional optional insurance), and Option C (family optional insurance).

[12] Notably, OPM's handbook on FEGLI includes the following example, which is virtually identical to the facts before the court. The example provides that an employee waived all FEGLI coverage when she was first employed in 1973, left federal government in 2003, and subsequently returned in 2004, at which point she elected "Basic life insurance." (ECF No. 10-3, at 4). She subsequently retired in 2005. OPM notes that "[s]ince she did not have the coverage for the full period of service it was available to her, she also didn't meet the all-opportunity requirement. Therefore, [the employee] was not eligible to continue *any* of her FEGLI coverage into retirement." (*Id.*) (emphasis added).

17

eligibility for "Additional life insurance" coverage is independent from the "Basic life insurance."[13]

Accordingly, there was no clear error of judgment on behalf of OPM in denying Plaintiff relief because Plaintiff has not held "Basic life insurance" for the duration of five years immediately preceding his September 11, 2010 retirement date, nor did he have "Basic life insurance" for the full period during which the insurance was available to him, given his decision explicitly to waive *all* life insurance coverage when he first entered federal service in 1968.

## C. The Government's Duties Related to FEGLIA

Plaintiff further argues that when he commenced clerking in 1968, he was not advised about the consequences of waiving "Basic life insurance" and the waiver form that he signed in 1968, SF 176, also did not identify any consequences associated with waiving coverage. (ECF No. 21, at 23-24, 27). Plaintiff contends that because he was uninformed about the consequences of waiving life insurance coverage in 1968, his first opportunity to elect "Basic life insurance" was in July 2007, when he rejoined the federal government as a "Schedule B" employee. Plaintiff cannot point to any affirmative duty that

---

[13] 5 C.F.R. § 870.301(b)(2) provides that an employee may elect one or more types of Optional insurance if: "(i) He/she has Basic insurance; and (ii) He/she does not have a waiver of that type (or types) [of] Optional insurance still in effect."

18

FEGLIA imposes on the Government to advise employees regarding the consequences of waiving life insurance coverage. Sovereign immunity has not been waived as to this claim. But even if the Government allegedly breached a legal duty, Plaintiff still cannot show that OPM's final agency decision was arbitrary, capricious, or an abuse of discretion.

FEGLIA does not impose a duty on a federal employer to inform employees about the consequences of waiving life insurance coverage, nor does it impose a duty on the Government to ensure that the life insurance waiver form explicitly warn prospective retirees about the waiver's effect on future life insurance coverage claims. OPM's decision to use a specific form to allow employees to select or decline life insurance coverage when they enter federal service is a discretionary function "so long as the form selected satisfies the statute's requirements of being a 'written notice.'" *Grooms v. Office of Personnel Management*, 154 F.3d 181, 185(4th Cir. 1998) (*quoting* 5 U.S.C. § 8702(b)). Section 8702(b) merely provides that "[a]n employee desiring not to be insured shall give written notice to his employing office on a form *prescribed by the Office* [OPM]." 5 U.S.C. § 8702(b) (emphasis added). Moreover, in the context of beneficiary designation forms under FEGLIA, for instance, some courts have found that the Government's only duty is to preserve forms "in a manner that permits accurate assessment."

*Nixon,* 916 F.Supp.2d at 863; *cf. Frerichs v. U.S.*, No. 05 C 5900, 2006 WL 200812, at *2 (N.D.Ill. Jan. 23, 2006) (noting that "no duty was created by the promise by USPS human resources official . . . to correct the election form").

Notably, other courts have recognized that under FEGLIA, the Government had no duty to ensure that employees even properly *completed* their insurance forms – let alone advise employees of the consequences of electing to waive coverage on the prescribed form – provided the Government properly maintained forms once employees executed them. *Metropolitan Life Ins. Co. v. Atkins*, 225 F.3d 510, 514 (5th Cir. 2000); *see also Argent v. O.P.M.*, No. 96 Civ. 2516, 1997 WL 473975, at *2 (S.D.N.Y. Aug. 20, 1997) (holding that "the Government's duties under FEGLIA are limited to negotiating and procuring group life insurance policies for its employees" and the government has no duty to inspect the beneficiary forms it receives to determine whether they are authentic or fraudulent). Consequently, sovereign immunity has not been waived as to Plaintiff's claim that he was uninformed about the consequences of waiving life insurance coverage.

Even assuming Plaintiff had alleged that the Government had a legal duty to advise Plaintiff about the consequences of waiving life insurance, Plaintiff still cannot show that OPM's decision to deny him life insurance coverage into retirement was

arbitrary, capricious, or an abuse of discretion. Plaintiff explicitly waived all life insurance coverage on SF 176 when he first had the opportunity to elect life insurance under FEGLIA in 1968. In *Grooms v. Office of Personnel Management*, the Fourth Circuit observed that an employee's act of filing and executing a life insurance coverage form that OPM prescribed, "was an affirmative act of waiver and wholly sufficient under the statutory and regulatory framework of FEGLIA." The court in *Grooms* further noted that even "government employees' careless administration of [the employee's] SF 2817 filing cannot estop the government *or require it to pay out benefits*." (emphasis added); *see also Chrobak v. Metropolitan Life Ins. Co.*, 517 F.2d 883, 887 (7th Cir. 1975) (holding that policy coverage cannot be expanded by erroneous government notices or billings or premiums).

Here, Plaintiff's execution of SF 176 – a form that OPM prescribed for employees to elect, decline, or waive life insurance coverage – was sufficient to waive Plaintiff's coverage under FEGLIA, regardless of whether he was advised about the consequences of such waiver. Consequently, OPM's decision to deny Plaintiff life insurance coverage into retirement, given his explicit waiver in 1968, fell within the Government's discretion and was not arbitrary or capricious.

## III. Conclusion

For the foregoing reasons, Defendant's motion will be granted. Plaintiff's cross-motion for summary judgment will be denied. A separate Order will follow.

_____/s/_____
DEBORAH K. CHASANOW
United States District Judge
